Troy A. Schell, Esq. (SBN 208661)
Bryan Wong, Esq. (SBN 205573)
3300 East Guasti Road, 3rd Floor
Ontario, California 91761
Telephone:   (909) 235-4400
Facsimile:    (909) 235-4419

Attorneys for Prime Healthcare Huntington Beach, LLC, a Delaware limited liability company doing business as Huntington Beach Hospital

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Prime Healthcare Huntington Beach, LLC, a limited liability company doing business as Huntington Beach Hospital,**<br><br>   **Plaintiff**<br>**vs.**<br><br>**Sylvia Mathews Burwell in her official capacity as Secretary of the Department of Health and Human Services,**<br><br>   **Defendant.** | Case No. 16-cv-08102-PA<br><br>**FIRST AMENDED COMPLAINT FOR REVIEW OF ADMINISTRATIVE LAW JUDGE RULING.** |

## COMPLAINT

COME NOW Prime Healthcare Huntington Beach, LLC, a Delaware limited liability company doing business as Huntington Beach Hospital (hereinafter, "Plaintiff"), who brings this action against Defendant Secretary of Health and Human Services Sylvia Mathews Burwell ("Defendant" or "Secretary"), alleging as follows:

///

1

**FIRST AMENDED COMPLAINT**

///

## I.  NATURE OF ACTION

1.     This case arises from Plaintiff's treatment of beneficiary initials "N.V.", ALJ Appellate# 1-1377941603, Docket Number M-14-4979.  In summary, the beneficiary was admitted inpatient by the treating physician due to the severity of his or her conditions and/or co-morbidities.  It is Plaintiff's position that the services provided to the beneficiary were medically reasonable and necessary.  As such,  the services provided were covered under Title XVIII of the Social Security Act ("the Act").  This matter arises because the Defendant, through the various Medicare subcontractors and the ALJ, have issued rulings not supported by substantial evidence, denying the necessity of the instant claims.

2.     Through Congressional authorization, the Secretary of HHS has promulgated thousands of regulations to establish Medicare policy. 42 C.F.R. § 400.200, *et seq.*

3.     Nothing in the Social Security Act should be construed as allowing the Federal Government to exercise control over the practice of medicine or the manner in which medical services are provided through the Medicare program. 42 U.S.C. § 1395.

4.     Medicare Part A was established to cover institutional health care services, including emergency care. *See Hall v. Sebelius*, 770 F. Supp.2d 61 64 (D.D.C. 2011)(citing 42 U.S.C. §§ 1395c-1395i-5). Medicare coverage is based on federal and state laws, national coverage decisions, and local coverage decisions. The CMS processes Medicare Part A claims based on a defined geographic area. Hospitals enroll in Medicare, and Medicare identifies hospitals through a combination of a Provider Transaction Access Number (PTAN) and a National Provider Identifier (NPI).

5.     In order to obtain payment for services provided to Medicare beneficiaries, healthcare providers generally must submit claims for reimbursement

2

**FIRST AMENDED COMPLAINT**

directly to the designated Medicare Administrative Contractor for the provider's region.

6. Acknowledging the importance of emergency care, Congress established a provision for hospitals which are not enrolled in Medicare to obtain reimbursement for emergency services provided to Medicare enrollees. Social Security Act § 1814(d)(1); 42 U.S.C. § 1395f (emphasis added)(amended in April 2015). Congress enacted this statute because non-provider hospitals would otherwise divert Medicare beneficiaries from its emergency rooms or request out of pocket payment for emergency care, "thereby working a financial hardship upon those [patients] who were supposed to have been relieved of such hardships under the program." 2 U.S. Code Cong. & Admin. News, p. 2918 (1967).

7. Due to the size and scope of Medicare, CMS contracts with private contractors, referred to as Medicare Administrative Contractors, to process Medicare claims and enroll health care providers in Medicare. 42 U.S.C. § 1395h ("The administration of [Part A] shall be conducted through contracts with Medicare administrative contractors…"); 42 U.S.C. § 1395kk-1. The CMS awards Medicare claims processing contracts through competitive procedures.[1]

8. A Medicare Administrative Contractor is to promptly make payments for all clean and proper claims for reimbursement. 42 U.S.C. § 1395h.

9. The Medicare Administrative Contractor geographically assigned to Plaintiff was Palmetto. Palmetto is owned by Blue Cross of South Carolina and has customers in "45 states, two U.S. territories, and the District of Columbia."[2] As Palmetto is owned by a for-profit-insurer, Palmetto is incentivized to be overly restrictive in its reimbursement policies. Thus, in order to ensure that hospitals

---

[1] http://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/MACJurisdiction.html

[2] Palmetto GBA, A Celerian Group Company, *About US,* http://www.palmettogba.com/palmetto/corporate.nsf/DocsCat/82JJVE1325~85257B26006D6F89852576C6004F541E

**FIRST AMENDED COMPLAINT**

have an opportunity to be heard before impartial authorities, the CMS has enacted several levels of administrative appeals. *Haro v. Sebelius*, 747 F.3d 1099, 1103 (9th Cir. 2013); 42 USC § 1320c-3(a)(3).  However, the MAC opinion denies Plaintiff the ability to have its claims for reimbursement heard by an impartial authority.

10.    As discussed in more detail below, the reasonableness of these services were challenged by the Medicare contractor, and this ruling was upheld by the ALJ. Subsequently, the matter was appealed to the Medicare Appeals Counsel, which subsequently failed to issue a ruling in the statutory time provided. Appellant therefore requested that the matter be escalated pursuant to 42 C.F.R. section 405.1100(c).  The Medicare Appeals Counsel issued an acknowledgement, advising that the Counsel would be unable to issue a ruling in the statutory time. Thus, Plaintiff is authorized to bypass the Council review and seek review of the ALJ's decision in Federal District Court pursuant to 42 C.F.R. section 405.1132(a)(2).

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction under  28 U.S.C. § 1331 (federal question), Section  I 869(b) of the  Social  Security  Act,  42 U.S.C.  § 1395ff(b)(2)  (establishing  the right to judicial review  of any decision  by a review entity selected  by the Departmental Appeals  Board for purposes of making determinations with respect to benefits  under Part A or Part B of the Medicare program),  and 28 U.S.C. § 2201 (declaratory judgment). The remaining amount in controversy in this action exceeds $1,500.00.

12.    Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides or has its principal place of business. 42 U.S.C. § 405 (g); 42 C.F.R. § 405.1136 (b); 42 C.F.R. § 405.1136 (b).

## III.    THE PARTIES

4

**FIRST AMENDED COMPLAINT**

13. Defendant Sylvia Burwell (the "Secretary") is the Secretary of the Department of Health and Human Services of the United States, whose responsibilities include implementing Title XXIII of the Act, as amended, 42 U.S.C. § 1395, et seq. (the "Medicare program"), through the Centers for Medicare and Medicaid Services ("CMS"). She is named as a defendant herein in her official capacity.

14. Plaintiff owns and operates an acute care, medical and surgical facility (the "Hospital") located in this judicial district. Plaintiff is a Delaware Limited Liability Company qualified to do business in California. All of Plaintiff's medical staff are properly licensed and certified under the relevant state and federal laws and regulations.

## IV.   STANDARD OF REVIEW

15. The Social Security Act states, *"any individual* dissatisfied with any initial determination under subsection (a)(1) of this section shall be entitled to reconsideration of the determination, and… a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title *and…to judicial review of the Secretary's final decision* after such hearing as is provided in section 405(g) of this title." 42 USC § 1395ff (emphasis added).

16. A final agency decision must be set aside because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 USC § 706 (2)(A). The court may not uphold the agency's determinations if they are "arbitrary, capricious, an abuse of discretion, not in accordance with law or unsupported by substantial evidence on the record taken as a whole." *Vista Hill Foundation, Inc. v. Heckler,* 767 F.2d 556, 559 (9th Cir. 1985) (citations omitted).

17. Deference is given to the Secretary's interpretation of her own regulations, "where [s]he has expertise in the substantive area involved and where the regulations were promulgated pursuant to congressional authorization,"

5

**FIRST AMENDED COMPLAINT**

however, "[t]he interpretation must sensibly conform to the purpose and wording of the regulations." *Id.*

18.  As the Secretary's interpretations of her regulations are without the force of law, while given deference, they must be treated with caution. *Id.* The decision will not be upheld if their application produces a result inconsistent with statute and regulations. *Id.*

## V.  ADMINISTRATIVE EXHAUSTION

19.  Medicare appeals regulations allow for five levels of appeal: (1)redetermination;  (2) reconsideration;  (3) ALJ hearing;  (4) MAC review;  and (5) judicial  review in a United States District Court.  As discussed above, if the MAC fails to issue a ruling in a timely manner per code and, after escalation request confirms that it cannot issue a ruling within 5 days, an Appellant has the right to seek judicial review in a United States District Court without awaiting a MAC Review.

20.  In a letter dated 12/13/2011, the Medicare Contractor determined that Plaintiff had been overpaid $5,380.30.  This determination was made based on a post-payment review of the claim.

21.  Pursuant to 42 C.F.R. section 405.940, Plaintiff requested a redetermination of the initial overpayment determination .  The Medicare Contractor Palmetto GBA ("Palmetto") issued a redetermination decision on 4/17/2012, finding that Plaintiff had been overpaid $5,380.30.

22.  In a letter received October 11, 2012, Plaintiff requested reconsideration of Palmetto's redetermination by Q2 Administrators, LLC, the Medicare Qualified Independent Contractor (the QIC").  See 42 C.F.R. section 405.960.  In a letter dated 1/16/2013, the QIC issued its decision, again denying the claim.

**FIRST AMENDED COMPLAINT**

23.     Plaintiff requested a hearing before an Administration Law Judge in a letter dated 3/12/2013, to challenge the QIC's decision.  (See 42 C.F.R. section 405.1002.)  This hearing was conducted by telephone on 4/17/2014.  The ALJ issued a negative decision on 5/22/2014.  Plaintiff subsequently appealed the decision to the MAC on 7/17/2014, which the MAC accepted as timely.

24.     Thereafter, the MAC failed to issue a ruling on the matter.  On August 15, 2016, Plaintiff issued an escalation request pursuant to 42 C.F.R. section 405.1132(a)(1).  On August 26, 2016, the MAC issued a response to the escalation request, confirming that it could not issue a ruling in the timeframe provided.  Plaintiff subsequently timely filed the instant action.

25.     Having exhausted its administrative remedies, Plaintiff now seeks judicial review pursuant to 42 C.F.R section 405.1136(a).

## VI.   FACTUAL BACKGROUND

26.     This matter arises out of an administrative appeal of a denied claim, which primarily involved whether or not an inpatient admission by the treating physician was medically necessary and justified.  Plaintiff will submit evidence and testimony that the inpatient admission denials were not supported by substantial evidence.

### CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

### (The ALJ Decision is Arbitrary and Capricious)

27.     Plaintiff repeats and re-alleges paragraphs 1-26 as if set forth fully herein.

28.     The Social Security Act should be broadly interpreted so as to fulfill the congressional purpose behind it. *Rosenberg v. Richardson,* 538 F.2d 487, 490

7

(2nd Cir. 1976). Congress intended the Social Security Act as a "broad program of social insurance" and it is essential that the Act be liberally construed. *Id.*

29.   A final agency decision must be set aside because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 USC § 706 (2)(A).

30.   The ALJ exceeded the authority granted by the Medicare statutes by rendering a decision not supported by substantial evidence, and/or based upon erroneous legal conclusions. In the alternative, the ALJ also exceeded its authority by failing to limit Plaintiff's liability, again, making its decision not supported by substantial evidence and/or based upon erroneous legal conclusions. 42 U.S.C. § 1395pp(a). The ALJ acted arbitrarily, capriciously and abused its discretion when it exceeded the authority granted to it by the Medicare statute.  The Defendant's action must be set aside under the APA because the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. section 706(2)(A).

### COUNT TWO:

### VIOLATION OF MEDICARE REGULATIONS (FAILURE OF THE ALJ TO CONSIDER SUBSTANTIAL EVIDENCE)

31.   Plaintiff repeats and realleges paragraphs 1-30 as if set forth fully herein.

32.   A final agency decision must be set aside because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 USC § 706 (2)(A).

33.   The Medicare  regulations require ALJs to consider, but not necessarily to follow, certain non-binding agency guidance.   The Defendant, through  the ALJ, has failed  to follow the requirements of the Medicare regulations  by rendering a decision not supported by substantial evidence.  In the

**FIRST AMENDED COMPLAINT**

alternative, the ALJ also exceeded its authority by failing to limit Plaintiff's liability, again, making its decision not supported by substantial evidence and/or based upon erroneous legal conclusions. 42 U.S.C. § 1395pp(a).

34.    The Defendant's action must be set aside under the APA because the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

35.    On or about March 15, 2011, Beneficiary "N.V." was admitted to Huntington Beach Hospital for treatment of sudden onset of severe chest pain. The pain was constant for the last hour since the onset. It was present at rest, measuring 7/10 intensity. The pain was also associated with shortness of breath, facial numbness, tingling and dizziness. Significant past medical history included cerebrovascular accident ("CVA"), chronic obstructive pulmonary disease ("COPD"), back pain, peptic ulcer disease and carotid artery stenosis.

36.    The treating physician expected that "N.V." may require more than 24 hours of hospital stay due to her risk of acute coronary syndrome ("ACS") or anxiety, along with accelerated hypertension. Accordingly he admitted her as an inpatient to the telemetry unit. Investigations included complete blood count, basic metabolic panel, troponin, chest x-ray, electrocardiogram ("EKG"), prothrombin time ("PT") with INR, partial prothrombin time ("PTT") and CT of the head, as well as cardiology consultation, as well as providing nitro paste. Per the Medicare guidelines it states that "The physician or the other practitioner responsible for a patient's care at the hospital is also responsible for deciding the patient should be admitted as an inpatient." Given "N.V." age, presentation, and co-morbidities, the treating physician concluded that his health and safety were at risk, necessitating inpatient care. The physician, in his independent medical judgement, determined that inpatient admission was medically necessary, and that 24 hours of care would be needed.

9

**FIRST AMENDED COMPLAINT**

37.     In deciding to admit "N.V.", the treating physician considered all risk factors and possible complications present at the time of admission. The physician could only consider medical evidence that was available at the time of admission. Inpatient level of care was necessary to provide the required management to this patient due to her high risk of ACS. The level of care and the intensity of services provided were of an inpatient level and met the statutory definition of an inpatient according to the Medicare Benefits Policy Manual.

38.     The inpatient hospital services which were provided during this admission were reasonable and necessary, were consistent with the Medicare Benefit Policy Manual definition of a covered inpatient hospital service, and the provider could not have reasonably known that these services would later be denied.

39.     The ALJ's decision improperly takes a retrospective review of the medical records, ignoring the ALJ requirement to makes its analysis based on inpatient care at the time of admission, per chapter 1 section 10 of the Medicare Handbook Manual. The level of care between an inpatient and outpatient is different base on the amount of nurses attending to the patient when admitted.

40.     The ALJ Judge's ruling disregards medical evidence present in the medical records and expert witness testimony, issuing a ruling that is not based on substantial evidence. Moreover, in interpreting the waiver of overpayment issue pursuant to sections 1870 and 1879 of the Act [42 U.S.C. 1395pp], the Court's ruling failed to make any analysis based upon substantial evidence, and failed to cite to any evidence in the record indicating that the Appellant knew or should have known that these billed services would be disallowed.  To the contrary, the medical record and the ruling cites to medical evidence indicating the reasonableness of the Appellant's expectation that these services would be properly approved and paid.  Instead of examining the facts of the claim, and the

10

**FIRST AMENDED COMPLAINT**

reasonableness of the medical decision making, the ruling was entirely silent as to any analysis of this issue.

## **PRAYER OF RELIEF**

**WHEREFORE**, Plaintiff requests:

1.   An order declaring the ALJ decision is unlawful and reverse;

2.   A determination that Plaintiff is entitled to reimbursement for the services provided in this matter;

3.   Cost, prejudgment interest pursuant to 42 U.S.C. 1395section (b)(2)(c)(iv) and 42 C.F.R. section 405.3780, the common law, and all other applicable laws, statutes, and regulations,

4.   Such other and further relief as the Court considers appropriate.


**TROY A. SCHELL, ESQ.**
**BRYAN WONG, ESQ.**


Dated:  May 1, 2017                    By:   /s/ *Bryan Wong*
                                                    Bryan Wong, Esq.
                                                    Attorneys for Plaintiff

11

**FIRST AMENDED COMPLAINT**