SANDRA R. BROWN
Acting United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
DAVID K. BARRETT
Assistant United States Attorney
Chief, Civil Fraud Section
LINDA A. KONTOS
Assistant United States Attorney
Deputy Chief, Civil Fraud Section
LYNN HEALEY SCADUTO (SBN 205291)
Assistant United States Attorney
        Room 7516, Federal Building
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-7395
        Facsimile: (213) 894-7819
        Email: lynn.scaduto@usdoj.gov

Attorneys for Defendant
THOMAS E. PRICE, M.D., in his official capacity as
Secretary of the Department of Health and Human Services

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PRIME HEALTHCARE HUNTINGTON BEACH, LLC, a limited liability company doing business as HUNTINGTON BEACH HOSPITAL,<br><br>v.<br><br>THOMAS E. PRICE, M.D., in his official capacity as SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | No. CV 16-08102 PA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; DECLARATION OF LYNN HEALEY SCADUTO IN SUPPORT THEREOF**<br><br>**[FED. R. CIV. P. 12(b)(6)]**<br><br>[[PROPOSED] ORDER FILED CONCURRENTLY HEREWITH]<br><br>Date:  Monday, June 19, 2017<br>Time:  1:30pm<br>Place:  Courtroom 9A<br><br>Honorable Percy Anderson |

## TABLE OF CONTENTS

**Page**

**I.    INTRODUCTION** …………………………………………………. **2**

**II.    PROCEDURAL BACKGROUND** ………………………………….. **3**

**III.    ARGUMENT** ………………………………………………………. **5**

**A.    Prime Will Have to Prove the Administrative Record Foreclosed a Reasonable Conclusion that an Inpatient Level of Care Was Medically Unnecessary and Must Plead Facts Sufficient to Show That.** …………………………….  **7**

**B.    Prime Fails to Plead Facts Sufficient to Show the Administrative Record Foreclosed a Reasonable Conclusion that an Inpatient Level of Care Was Medically Unnecessary.…………………………………………………..**  **8**

**C.    The Court Should Dismiss Prime's First Amended Complaint With Prejudice…………………………………**  **11**

**IV.    CONCLUSION………………………………………………….**  **12**

**TABLE OF AUTHORITIES**

Federal Cases                                                                                          Page(s)

*Balistreri v. Pacifica Police Department*,
    901 F.2d 696 (9th Cir. 1990) ............................................................................... 6

*Barnes v. U.S. Dep't of Transp.*,
    655 F.3d 1124 (9th Cir. 2011) .............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 6

*Dickinson v. Zurko*,
    527 U.S. 150 (1999) ............................................................................................. 7

*Doppelmayr v. Colvin*, 2013 WL 3056491, at *2 (E.D. Cal. June 17, 2013) ................... 8

*East Bay Auto. Council v. NLRB*,
    483 F.3d 628 (9th Cir. 2007) ............................................................................... 7

*Greenhow v. Secretary of Health & Human Services*,
    863 F.2d 633, 635 (9th Cir. 1988) ....................................................................... 8

*High Sierra Hikers Ass'n v. Blackwell*,
    390 F.3d 630 (9th Cir. 2004) ............................................................................... 7

*Kappos v. Hyatt*,
    132 S. Ct. 1690 (2012) ......................................................................................... 7

*Levitt v. Yelp!, Inc.*,
    765 F.3d 1123 (9th Cir. 2014) .............................................................................. 6

*Maximum Comfort Inc. v. Sec'y of Health & Human Servs.*,
    512 F.3d 1081, 1087 (9th Cir. 2007) ................................................................... 10

*Mayes v. Massanari*,
    276 F.3d 453 (9th Cir. 2001) ............................................................................... 8

*Monjaraz-Munoz v. INS*,
    327 F.3d 892 (9th Cir.), *amended by* 339 F.3d 1012 (9th Cir. 2003) ..................... 7, 10

*NLRB v. Int'l Bhd. Of Elec. Workers, Local 48*,
    345 F.3d 1049 (9th Cir. 2003) .............................................................................. 7

*Snoqualmie Indian Tribe v. FERC*,
    545 F.3d 1207 (9th Cir. 2008) .............................................................................. 8

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047, 1058–59 (9th Cir. 2011) .............................................................. 11

*U.S. Postal Serv. v. Gregory*,
    534 U.S. 1 (2001) ................................................................................................. 7

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) .................................................................................. 6

Federal Statutes

5 U.S.C. § 701, *et seq.* ............................................................................................ 6
42 U.S.C. § 405(g) ............................................................................................. 4, 7
42 U.S.C. § 1395ff ................................................................................................ 3
42 U.S.C. § 1395ff(a)(2)(A) ................................................................................ 3
42 U.S.C. § 1395ff(a)(3) ...................................................................................... 3
42 U.S.C. § 1395ff(b)(1)(A), (E) ........................................................................ 4
42 U.S.C. § 1395ff(b)(1)(E)(i), (d)(1)(A) ........................................................... 4
42 U.S.C. § 1395ff(c) ........................................................................................... 3
42 U.S.C. § 1395ff(c)(3)(C)(ii) ........................................................................... 4
42 U.S.C. § 1395ff(d)(1)(a) ................................................................................. 4
42 U.S.C. § 1395ff(d)(2) ...................................................................................... 4
42 U.S.C. § 1395ff(d)(3)(A) ................................................................................ 4
42 U.S.C. § 1395ff(d)(3)(B) ................................................................................ 5
42 U.S.C. § 1395kk–1(a)(1)–(4) ......................................................................... 3

Regulations

42 C.F.R. § 405.968(a) .......................................................................................... 3
42 C.F.R. § 405.1006(c) ........................................................................................ 5
42 C.F.R. § 405.1104 ............................................................................................ 4
42 C.F.R. § 405.1108(d) ........................................................................................ 4
42 C.F.R. § 405.1132(b) ........................................................................................ 5
42 C.F.R. § 405.1136(f) ......................................................................................... 7
42 C.F.R. § 405.980 .............................................................................................. 4
42 C.F.R. § 405.1130 ............................................................................................ 4
42 C.F.R. §§ 405.1100(c)-(d) ............................................................................... 4

Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................... 2, 5, 6, 11

PLEASE TAKE NOTICE that on Monday, June 19, 2017, at 1:30p.m., or as soon thereafter as the matter may be heard, Defendant Thomas E. Price, M.D., in his official capacity as the Secretary of the Department of Health and Human Services ("United States" or "HHS") will bring on for hearing a Motion to Dismiss before the Honorable Percy Anderson, United States District Judge, in Courtroom 9A in the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012.

HHS hereby moves this Court for an order dismissing this action with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motion is made on the ground that, even after amending its initial complaint in response to HHS's prior motion to dismiss, Plaintiff still fails to allege facts that, if true, would be sufficient to state a claim for which relief can be granted. This motion is based on the attached Memorandum of Points and Authorities, the declaration of Lynn Healey Scaduto filed concurrently herewith, and upon such other and further argument the Court may allow at the time of the hearing.

This motion is made following conferences of counsel under Local Rule 7-3 which took place on March 22, 2017, and April 18, 2017.

Dated: May 15, 2017

Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney

*/s/  Lynn Healey Scaduto*
LYNN HEALEY SCADUTO
Assistant United States Attorney
Attorneys for the United States of America

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      INTRODUCTION**

After having its $5,380.30 claim for reimbursement denied by multiple levels of Medicare contractors and an Administrative Law Judge ("ALJ"), Plaintiff Prime Healthcare Huntington Beach, LLC ("Prime") evidently grew tired of waiting for the Departmental Appeals Board of the U.S. Department of Health and Human Services ("DAB") to review the ALJ's decision.  After the time specified in the statute elapsed, Prime elected to forego review by the DAB and escalate its claim to federal district court.  Prime asks this Court to reverse the ALJ's decision to uphold the denial of Prime's claim on the ground that Prime's inpatient admission of beneficiary N.V. ("Beneficiary") was medically unnecessary.  Defendant Thomas E. Price, M.D., in his official capacity as Secretary of the U.S. Department of Health and Human Services ("United States" or "HHS") asks the Court to dismiss Prime's First Amended Complaint with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Prime responded to HHS's first motion to dismiss by amending its complaint, adding new allegations about the beneficiary's condition and asserting that "[i]t is Plaintiff's position that the services provided to the beneficiary were medically reasonable and necessary."  Even after amendment, Prime still fails to disclose the ALJ's stated reasons for concluding an inpatient level of care was medically unnecessary or to identify any evidence in the record that makes Prime's contrary "position" the only reasonable one.  Prime's renewed promise to one day "submit evidence and testimony that the inpatient admission denials were not supported by substantial evidence" remains insufficient.

Judicial review of an agency decision is deferential: the role of the Court is not to substitute its judgment — or Prime's — for the ALJ's judgment that, on the record before the ALJ, inpatient admission was medically unnecessary.  Without more, that Prime disagrees with the ALJ's decision is not enough to state a claim for relief.  Prime

has twice failed to allege facts that, if true, would be sufficient to show that the contents of the administrative record supported only Prime's "position." Further amendment would be futile, and the Court should accordingly dismiss Prime's First Amended Complaint with prejudice.

## II.    PROCEDURAL BACKGROUND

Release valves built into the Medicare's overloaded and underfunded appeals process are the reason why Prime was able to file an action now to contest the denial of its $5,380.30 Medicare claim. *See generally* Statement of Nancy J. Griswold before the United States Senate Finance Committee (Apr. 28, 2015), http://www.finance.senate.gov/imo/media/doc/SFC%20Griswold-OMHA%20updated%20testimony%20%204%2028%2015.pdf (congressional testimony explaining, among other things, how Congressional funding for administrative adjudication has not kept pace with the dramatic increases in workload). After furnishing services to a Medicare beneficiary, hospitals and other health care providers submit claims for reimbursement to Medicare Administrative Contractors ("MAC"). *See* 42 U.S.C. §§ 1395kk–1(a)(1)–(4), 1395ff(a)(2)(A). If a claim is denied, a provider may appeal through a four-step administrative appeal process. *See id.* at § 1395ff. First, it may present its claim to the MAC for redetermination, which decision must occur within 60 days. *Id.* at § 1395ff(a)(3). A provider may then appeal a negative redetermination to a Qualified Independent Contractor ("QIC"). A QIC must conduct an "independent, on-the-record review of an initial determination, including the redetermination and all issues related to payment of the claim," and, in so doing, it must "review[ ] the evidence and findings upon which the [previous determinations were] based," together with "any additional evidence the parties submit or that the QIC obtains on its own." 42 C.F.R. § 405.968(a). The QIC also has 60 days to resolve claims. 42 U.S.C. § 1395ff(c). Both of these stages are overseen by the Centers for Medicare & Medicaid Services ("CMS") within HHS.

3

After these initial determinations, a provider whose claim has been denied may request a hearing before an ALJ. *See* 42 U.S.C. § 1395ff(b)(1)(E)(i), (d)(1)(A). The ALJ level of review is overseen by the Office of Medicare Hearings and Appeals ("OMHA"), a division within the Office of the Secretary that is functionally and fiscally separate from CMS. ALJs endeavor to issue a decision within 90 days of the time appellants request a hearing. *See* 42 U.S.C. § 1395ff(d)(1)(a). In the last stage of review, an ALJ's decision may be appealed to the Departmental Appeals Board ("DAB"). *See id.* at § 1395ff(d)(2).

The subunit of the DAB that reviews these claims is the Medicare Appeals Council. The DAB provides the final level of review within HHS, and its decision is considered that of the Secretary, subject to judicial review. *See* 42 C.F.R. §§ 405.980, 405.1130. A provider that obtains a final decision from the DAB is entitled to "judicial review of [HHS's] final decision . . . as is provided in" 42 U.S.C. § 405(g), if at least $1000 (indexed for inflation from 2003) is in controversy. *Id.* at §§ 1395ff(b)(1)(A), (E). Section 405(g), in turn, permits a provider to file suit in district court in its home district, where the agency's factual determinations are required to be "conclusive" if they are "supported by substantial evidence." *Id.* at § 405(g).

The Medicare Act provides for a process known as "escalation" that allows providers to choose to bypass the QIC, ALJ, and DAB levels of review if those decisionmakers are unable to resolve their claims within the statutorily prescribed time period. If, for instance, a QIC is unable to complete its review within 60 days, an appellant may choose to "escalate" its appeal to an ALJ. *See* 42 U.S.C. § 1395ff(c)(3)(C)(ii). If an ALJ has not rendered a decision within 90 days, a claimant may choose to escalate to the DAB, *id.* at § 1395ff(d)(3)(A), in which case it is the QIC's decision that is under review. *See* 42 C.F.R. § 405.1104; 42 C.F.R. § 405.1108(d). On escalated appeal, the DAB endeavors to render a decision within 180 days, as opposed to its typical 90-day timeframe. *See* 42 C.F.R. § 405.1100(c)-(d).

Where, as here, the DAB does not render a decision within the applicable timeframe, the provider may bypass the DAB and seek judicial review in federal court so long as its claim meets the amount-in-controversy requirement, which is currently $1,560. *See* 42 U.S.C. § 1395ff(d)(3)(B); 42 C.F.R. § 405.1132(b); 42 C.F.R. § 405.1006(c). Together, these provisions allow providers, in the event any level of the appeals process gets backlogged, to choose to "leapfrog" that level and move on to the next one.

Although providers can seek judicial review, the vast majority do not. In the 2016 fiscal year, ALJs adjudicated more than 87,000 appeals and the DAB adjudicated more than 2,300. During the same time period there were only 27 appeals to the federal district court. Declaration of Lynn Healey Scaduto ("Scaduto Decl.") at ¶ 3. Leapfrogging the DAB to get to federal district court is even more rare: only five of the 27 appeals to district court were escalated to federal district court without a DAB decision. *Id.*

That is what Prime has elected to do here and in more than two dozen other virtually identical cases it has filed in this District. *See id.* at Exh. 1. Prime acknowledges that it brought this case and many more like it in the hope of obtaining "favorable judicial rulings" that Prime believes are "critical to [its] defense" in the United States' pending False Claims Act case against Prime ("FCA Action"). *See* Docket No. 22**,** Opposition to Stay Motion at 7:9-12, 18:25-19:1. In the FCA Action, the United States has alleged that Prime implemented a scheme to increase inpatient admissions without regard to medical necessity. *See* Docket No. 127 in C.D. Cal. Case No. CV 11-08214 PJW. The United States alleges in its complaint in the FCA Action that Prime used an array of tactics to implement the alleged scheme, including but not limited to pressuring treating doctors to admit Medicare beneficiaries when their medical judgment would have been to do otherwise. *See, e.g.*, *id.* at 3:7-26, 23:15-24:2.

## III.  ARGUMENT

A court must dismiss a complaint if it fails to state a claim for which relief can be

5

granted.  Fed. R. Civ. P. 12(b)(6).  A motion under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory.  *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  In deciding whether the plaintiff has alleged sufficient facts, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

While "heightened fact pleading of specifics" are not required, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  Courts in the Ninth Circuit employ a two-prong test of the sufficiency of the facts alleged in a complaint:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Levitt v. Yelp!, Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (internal quotations omitted).

Judicial review of agency factfinding necessarily starts with the agency's findings of fact.  Here, Prime starts and ends its First Amended Complaint with its "position" that inpatient admission was medically necessary.  Docket No. 27, FAC ¶¶ 1, 38.  In between, Prime conspicuously omits the ALJ's stated reasons for concluding otherwise and the Findings of Fact the ALJ set forth in support of that conclusion.  Prime also fails to identify anything in the record that should have foreclosed the ALJ from making those Findings of Fact or reaching that conclusion.  Prime appears instead to assume that the "treating physician" who "determined  . . . in his independent medical judgment that inpatient admission was medically necessary" is entitled to deference from the ALJ and, in turn,

6

this Court.  FAC at ¶¶ 36, 37.  But it is the ALJ's determinations that are entitled to deference here.  Articulating nothing more than Prime's opinion that the treating physician got it right and the ALJ got it wrong, Prime's First Amended Complaint fails to allege facts that, if true, would be sufficient to establish Prime's entitlement to a reversal of the ALJ's decision.

**A.      Prime Will Have to Prove the Administrative Record Foreclosed a Reasonable Conclusion that an Inpatient Level of Care Was Medically Unnecessary and Must Plead Facts Sufficient to Show That.**

The Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, sets forth the standards governing judicial review of decisions made by federal administrative agencies.  *See Dickinson v. Zurko*, 527 U.S. 150, 152 (1999); *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004); *see also* 42 U.S.C. § 405(g); 42 C.F.R. § 405.1136(f).  Review under the APA is narrow and the reviewing court may not substitute its judgment for that of the agency.  *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001); *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).  An agency's factual findings are reviewed under the "substantial evidence" standard.  *See Kappos v. Hyatt*, 132 S. Ct. 1690, 1694 (2012); *East Bay Auto. Council v. NLRB*, 483 F.3d 628, 633 (9th Cir. 2007); *see also* 42 U.S.C. § 405(g) (HHS's factual determinations are required to be "conclusive" if they are "supported by substantial evidence").

Substantial evidence means more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See NLRB v. Int'l Bhd. of Elec. Workers, Local 48*, 345 F.3d 1049, 1054 (9th Cir. 2003).  The standard is "extremely deferential" and a reviewing court must uphold the agency's findings "unless the evidence presented would compel a reasonable factfinder to reach a contrary result."  *See Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir.), *amended by* 339 F.3d 1012 (9th Cir. 2003) (internal

7

quotation marks and citation omitted).  The substantial evidence standard requires the reviewing court to review the administrative record as a whole, weighing both the evidence that supports the agency's determination as well as the evidence that detracts from it.  *See Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the agency.  *See Snoqualmie Indian Tribe v. FERC*, 545 F.3d 1207, 1212 (9th Cir. 2008).  Whether an administrative agency's decision is supported by substantial evidence is a question of law.  *See Doppelmayr v. Colvin*, 2013 WL 3056491, at \*2 (E.D. Cal. June 17, 2013) (citing *Greenhow v. Secretary of Health & Human Services*, 863 F.2d 633, 635 (9th Cir. 1988) ("The question of whether an administrative agency's finding of fact is supported by substantial evidence is not . . . a factual issue; it is a question of law"), *overruled on other grounds*, *U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (*en banc*)).

> **B.      Prime Fails to Plead Facts Sufficient to Show the Administrative Record Foreclosed a Reasonable Conclusion that an Inpatient Level of Care Was Medically Unnecessary.**

Prime contends that the "ALJ exceeded the authority granted by the Medicare statutes by rendering a decision not supported by substantial evidence, and/or based upon erroneous legal conclusions."  FAC at ¶ 30; *see also id.* at ¶ 33.  Prime asserts that, as a result of that decision, it has been denied reimbursement in the amount of $5,380.30.  *Id.* at ¶¶ 20, 21.  Prime asks the Court to enter "[a]n order declaring the ALJ decision is unlawful and revers[ing that decision]" and make "[a] determination that Plaintiff is entitled to reimbursement for the services provided in this matter."  *Id.* at Prayer for Relief at ¶¶ 1, 2.

Medicare reimburses only services that are "reasonable and necessary for the diagnosis or treatment of illness or injury."  42 U.S.C. § 1395y(a)(1)(A).  Where a provider seeks reimbursement for an inpatient admission,

> [r]eview of the medical record must indicate that inpatient hospital care was medically necessary, reasonable, and appropriate for the diagnosis and condition of the beneficiary at any time during the stay. The beneficiary must demonstrate signs and/or symptoms severe enough to warrant the need for medical care and must receive services of such intensity that they can be furnished safely and effectively only on an inpatient basis.

CMS Publication 100-08, Medicare Program Integrity Manual, Ch. 6 § 6.5.2 (Rev. 656).

Prime states that "[i]t is Plaintiff's position that the [inpatient] services provided to the beneficiary were medically reasonable and necessary." FAC at ¶ 1. In response to HHS's motion to dismiss the initial complaint, Prime sets forth in its First Amended Complaint the Beneficiary's alleged symptoms and conditions. Prime alleges that the Beneficiary was admitted after presenting to the hospital with "sudden onset of severe chest pain" that had lasted an hour, that had a "7/10 intensity" and that "was associated with shortness of breath, facial numbness, tingling and dizziness." FAC at ¶ 35. Prime further alleges that the beneficiary's medical history included "cerebrovascular accident, chronic obstructive pulmonary disease, back pain, peptic ulcer disease and carotid artery stenosis." *Id.*

Prime alleges that "[i]npatient level of care was necessary to provide the required management to this patient due to her high risk of acute coronary syndrome." *Id.* at ¶ 37. Prime alleges that the "[i]nvestigations" performed on the Beneficiary included a "complete blood count, basic metabolic panel, troponin, chest x-ray, electrocardiogram, prothrombin time with INR, partial prothrombin time and CT of the head, as well as cardiology consultation, as well as providing nitro paste." *Id.* at ¶ 36. Prime identifies nothing in the record that established that any of these "investigations" could only be performed on an inpatient basis rather than at a lower, less costly level of care, such as in the Emergency Department or on outpatient "observation" status at the hospital. Prime conspicuously omits from the First Amended Complaint the ALJ's stated reasons for

9

concluding an inpatient level of care was medically unnecessary and the Findings of Fact the ALJ set forth in support thereof. Prime identifies nothing in the record that should have foreclosed those findings or that otherwise required a determination that the beneficiary could be treated safely and effectively only on an inpatient basis.

Prime alleges instead that "the treating physician considered all risk factors and possible complications" and "determined that inpatient admission was medically necessary . . . in his independent medical judgment." FAC at ¶ 37. But reimbursement hinges on what is in the medical record, not the treating physician's opinion. The Health Care Financing Administration ("HCFA"), the precursor of today's Centers for Medicare & Medicaid Services, issued a ruling in 1993 stating that no presumptive weight should be given to a treating physician's opinion as to the medical necessity of inpatient hospital services. *See* HCFA Ruling 93-1, May 18, 1993, available at https://www.cms.gov/Medicare/Appeals-and-Grievances/OrgMedFFSAppeals/Downloads/HCFAR931v508.pdf ("[M]eeting the coverage rule requiring the physician's certification does not guarantee that the care provided will be covered. In order to be covered . . . , the care must also be 'reasonable and necessary.'"). That ruling is binding on ALJs. *Id.* And the Ninth Circuit has rejected in similar circumstances the notion that an ALJ is bound by the medical judgment of a certifying physician. *See Maximum Comfort Inc. v. Sec'y of Health & Human Servs.*, 512 F.3d 1081, 1087 (9th Cir. 2007) (where power wheelchair provider appealed numerous denials of reimbursement for lack of medical necessity, rejecting provider's argument that "the Secretary must accept the certificate of medical necessity as conclusive for purposes of reimbursing the equipment supplier") (citing cases). Indeed, if ALJs and the federal courts were bound in this context by a certifying physician's "independent medical judgment," the Medicare program would be virtually defenseless against unscrupulous providers willing to certify medical necessity even in its absence for personal gain.

10

The Court can only grant Prime the relief it seeks here if "the evidence presented would compel a reasonable factfinder to reach a contrary result." *Monjaraz-Munoz*, 327 F.3d at 895. Without more, a laundry list of "investigations" performed to assess the Beneficiary's chest pain and a plea for deference to the treating physician do not "plausibly suggest an entitlement to relief" under that standard. *Levitt*, 765 F.3d at 1135. The Court should accordingly dismiss the First Amended Complaint.

## C. The Court Should Dismiss Prime's First Amended Complaint With Prejudice.

After HHS moved to dismiss Prime's complaint for failure to state a claim for which the law provides relief, Prime amended its complaint. Docket Nos. 26, 27. But Prime's thin, conclusory First Amended Complaint still conspicuously omits the very findings it asks this Court to conclude the ALJ made without substantial evidence. Prime's unwillingness to disclose those findings, let alone identify anything in the record that undermines them, reveals that amendment would be futile.[1] The Court should accordingly dismiss Prime's First Amended Complaint without leave to amend. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1058–59 (9th Cir. 2011) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (quotations omitted)).

---

[1] In the last paragraph of the First Amended Complaint, Prime summarily alleges for the first time that the ALJ erred "[i]n interpreting the waiver of overpayment issue" because "the ruling failed . . . to cite any evidence in the record indicating that [Prime] knew or should have known that these billed services would be disallowed." FAC at ¶ 40. Prime fails to identify facts in the record that establish its entitlement to be paid despite the lack of medical necessity. Published authorities such as those cited at Section III.B. *supra* gave Prime notice that reimbursement would be denied if the medical record did not substantiate the necessity of an inpatient level of care. *See Maximum Comfort*, 512 F.3d at 1088-89 (upholding denial of waiver of overpayment because published guidance provided "sufficient notice" to provider that claim could be denied for lack of medical necessity notwithstanding the physician's certification of medical necessity).

11

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Prime's First Amended Complaint under Rule 12(b)(6) for failure to allege facts that, if true, would be sufficient to establish Prime's entitlement to a reversal of the ALJ's decision.

Dated: May 15, 2017                    Respectfully submitted,

                                       SANDRA R. BROWN
                                       Acting United States Attorney


                                       */s/ Lynn Healey Scaduto*
                                       LYNN HEALEY SCADUTO
                                       Assistant United States Attorney
                                       Attorneys for the United States of America

## DECLARATION OF LYNN HEALEY SCADUTO

I, Lynn Healey Scaduto, declare:

1.      I am the Assistant United States Attorney assigned responsibility for handling this action.  This declaration is offered in support of the United States' Motion to Dismiss this action.

2.      Attached hereto as Exhibit 1 is a list of 26 actions pending in the Central District of California brought by hospitals operated by Prime Healthcare Services, Inc. and related entities ("Prime").  In each, Prime seeks a judicial reversal of the decision of a Medicare Administrative Law Judge ("ALJ") to uphold the denial of an inpatient claim on the ground that an inpatient level of care was not medically necessary.

3.      I have been informed by the Office of Medicare Hearings and Appeals ("OMHA") that ALJs decided 87,123 appeals in the 2016 fiscal year.  I have been informed by the Departmental Appeals Board of the U.S. Department of Health and Human Services ("DAB") that, in the 2016 fiscal year, the Medicare Appeals Council, which is the subunit of the DAB that reviews claim denials like the one underlying this action, adjudicated 2,320 cases.  During the same time period, claimants appealed 27 cases to federal district court.  Of those 27, five were escalated to federal district court before the DAB had completed its review.

4.      The foregoing is based on my personal knowledge and on information provided to me by the OMHA and the DAB.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2017, at Los Angeles, California.

*/s/ Lynn Healey Scaduto*
LYNN HEALEY SCADUTO

13

EXHIBIT 1

1. *Prime Healthcare Services-Sherman Oaks, LLC v. Price*, Case No. CV 16-8098 RAO (filed October 31, 2016);

2. *Prime Healthcare Services-San Dimas, LLC v. Price*, Case No. CV 16-8099 JAK (filed October 31, 2016)

3. *Prime Healthcare Services-San Dimas, LLC v. Price*, Case No. CV 16-8101 ODW (filed October 31, 2016)

4. *Prime Healthcare Huntington Beach, LLC v. Price,* Case No. CV 16-8102 PA (filed October 31, 2016)

5. *Prime Healthcare Services-San Dimas, LLC v. Price,* Case No. CV 17-75 DMG (filed January 5, 2017)

6. *Prime Healthcare Services-San Dimas, LLC v. Price,* Case No. CV 17-78 DSF (filed January 5, 2017)

7. *Prime Healthcare Services-Sherman Oaks, LLC v. Price,* Case No. CV 17-161 DSF (filed on January 9, 2017)

8. *Prime Healthcare Services-Sherman Oaks, LLC v. Price,* Case No. CV 17-170 JFW (filed on January 9, 2017)

9. *Prime Healthcare Services-Sherman Oaks, LLC v. Price*, Case No. CV 17-174 VAP (filed on January 9, 2017)

10. *Desert Valley Hospital, LLC v. Price*, Case No. CV 17-661 DMG (filed January 27, 2017)

11. *Prime Healthcare Services-Montclair, LLC v. Price*, Case No. CV 17-659 PA (filed January 27, 2017)

12. *Prime Healthcare Services-Sherman Oaks, LLC* v. Price, Case No. CV 17-658 JFW (filed January 27, 2017)

13. *Prime Healthcare Services-Garden Grove, LLC v. Price*, Case No. CV 17-

14

169 AG (filed January 30, 2017)

14. *Prime Healthcare Services-Garden Grove, LLC v. Price*, Case No. CV 17-178 AG (filed February 1, 2017)

15. *Prime Healthcare Services- Montclair, LLC v. Price*, Case No. CV 17-750 CAS (filed January 30, 2017)

16. *Prime Healthcare Services-Garden Grove, LLC v. Price*, Case No. CV 17-171 DOC (filed January 30, 2017)

17. *Prime Healthcare Services-Montclair, LLC v. Price*, Case No. CV 17-173 AB (filed January 31, 2017)

18. *Prime Healthcare Services- Montclair, LLC v. Price*, Case No. CV 17-174 JFW (filed January 31, 2017)

19. *Prime Healthcare Services-La Palma, LLC v. Price*, Case No. CV 17-802 RGK (filed February 1, 2017)

20. *Prime Healthcare Services-Garden Grove*, *LLC v. Price*, Case No. CV 17-340 JLS (filed February 24, 2017)

21. *Prime Healthcare Services-Garden Grove v. Price, LLC*, Case No. CV 17-347 JVS (filed February 24, 2017)

22.*Prime Healthcare Services-Sherman Oaks, LLC v. Price*, Case No. CV 17-1551 AB (filed February 24, 2017)

23. *Prime Healthcare Services-Garden Grove v. Price*, LLC, Case No. CV 17-346 JLS (filed February 24, 2017)

24. *Prime Healthcare Services-Encino, LLC v. Price*, Case No. 17-1562 SJP (filed February 27, 2017)

25. *Veritas Health Services, Inc., dba Chino Valley Medical Center v. Price,* Case No. CV 17-359 MWF (filed February 24, 2017)

26. *Veritas Health Service, Inc., dba Chino Valley Medical Center v. Price.* Case No. CV 17-365 FMO (filed February 24, 2017)

15